IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


DENISE BURGESS,

                    Plaintiff,

vs.                                      Case No. 12-1258-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,[1]

                    Defendant.


MEMORANDUM AND ORDER

     This is an action reviewing the final decision of the

Commissioner of Social Security denying the plaintiff disability

insurance benefits.  The matter has been fully briefed by the

parties.

**I.  General legal standards**

     The court's standard of review is set forth in 42 U.S.C.

§ 405(g), which provides that "the findings of the Commissioner

as to any fact, if supported by substantial evidence, shall be

conclusive."  The court should review the Commissioner's

decision to determine only whether the decision was supported by

substantial evidence and whether the Commissioner applied the

correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984

(10th Cir. 1994).  Substantial evidence requires more than a

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013, replacing Michael J. Astrue, the former Commissioner of Social Security.

scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or

mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If

the claimant survives step four, the fifth and final step

requires the agency to consider vocational factors (the

claimant's age, education, and past work experience) and to

determine whether the claimant is capable of performing other

jobs existing in significant numbers in the national economy.

Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of

the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th

Cir. 1993).   At step five, the burden shifts to the

Commissioner to show that the claimant can perform other work

that exists in the national economy.  Nielson, 992 F.2d at 1120;

Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The

Commissioner meets this burden if the decision is supported by

substantial evidence.  Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will

assess the claimant's residual functional capacity (RFC).  This

RFC assessment is used to evaluate the claim at both step four

and step five.  20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g);

416.920(a)(4), 416.920(e,f,g).

## II.  History of case

On July 11, 2011, administrative law judge (ALJ) Christina

Young Mein issued her decision (R. at 10-21).  Plaintiff alleges

that she has been disabled since March 1, 2008 (R. at 10).

Plaintiff is insured for disability insurance benefits through

December 31, 2012 (R. at 12). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since plaintiff's alleged onset date (R. at 12). At step two, the ALJ found that plaintiff has the following severe impairments: fibromyalgia; depression; and migraine headaches (R. at 12). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 12). After determining plaintiff's RFC (R. at 14), the ALJ determined at step four that plaintiff is unable to perform her past relevant work (R. at 20). At step five, the ALJ found that plaintiff could perform jobs that exist in significant numbers in the national economy (R. at 20-21). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 21).

**III. Did the ALJ err in discounting the opinions of Dr. Veloor, plaintiff's treating physician?**

On November 4, 2010, Dr. Veloor, plaintiff's treating physician, filled out a form indicating that plaintiff had fibromyalgia, and setting forth the following limitations:

> Hours patient can work per day: 2 hours
>
> Standing at one time: 30 minutes
>
> Stand in workday: 60 minutes
>
> Sitting at one time: 15-30 minutes
>
> Sitting in workday: 60 minutes
>
> Lifting on an occasional basis: 5 pounds

Lifting on a frequent basis: none

Bend and Stoop: occasionally

Raise arms over shoulder level: occasionally

(R. at 425-426).

The ALJ provided the following explanation for discounting the opinions of Dr. Veloor:

> The severe limitations imposed by Dr. Veloor…are contrary to the claimant's own testimony that she has the capacity to lift 10 pounds at a time, stand for one hour at a time, and can sit for one hour at a time. In addition, based on the medical evidence in the record, it would appear that Dr. Veloor's opinions are based solely on the claimant's subjective complaints of pain symptoms at that time, and not on credible objective evidence. Additionally, as the July 19, 2010 examination indicates, Dr. Veloor's own medical records do not support her opinions of the claimant's functioning during this time. As a result, Dr. Veloor's opinions in this matter are given very little weight in this decision.

(R. at 17). According to defendant, the ALJ gave little weight to the opinions of Dr. Veloor because they were not supported by plaintiff's own testimony and reports of daily activities, were inconsistent with Dr. Veloor's treatment notes, and were based on plaintiff's subjective complaints (Doc. 16 at 13). The ALJ stated that plaintiff's "significant" activities showed that plaintiff "clearly retains the ability to perform work activities" (R. at 18).

Although Dr. Veloor indicated that plaintiff could only stand for 30 minutes at a time, and sit for 15-30 minutes at a time (R. at 426), plaintiff testified that she could sit and stand about one hour at a time (R. at 54). However, plaintiff qualified her answer about standing for one hour at a time by stating that she could do that on a "good" day (R. at 54). Plaintiff went on to testify that she only has 3 "good" days a week, and that on the other 4 days, she is not able to do anything, but just lays around, and has trouble walking or bending her fingers (R. at 58). Plaintiff's qualifications of her answer regarding her ability to sit and stand were not discussed by the ALJ.

The ALJ further asserted that it appears that Dr. Veloor's opinions are based solely on plaintiff's subjective complaints, and not on credible objective medical evidence. However, as this and other courts have repeatedly stated, the symptoms of fibromyalgia are entirely subjective, and there are no laboratory tests to identify its presence or severity. Wilson v. Astrue, 602 F.3d 1136, 1143 (10th Cir. 2010)(when the record contained diagnoses of chronic pain syndrome or fibromyalgia, the court stated that complaints of severe pain do not readily lend themselves to analysis by objective medical tests, and are notoriously difficult to diagnose and treat; further noting that no objective medical tests reveal the presence of fibromyalgia);

Gilbert v. Astrue, 231 Fed. Appx. 778, 783-784 (10th Cir. Apr. 11, 2007)(the lack of objective test findings noted by the ALJ is not determinative of the severity of fibromyalgia); Brown v. Barnhart, 182 Fed. Appx. 771, 773 (10th Cir. May 25, 2006); Priest v. Barnhart, 302 F. Supp.2d 1205, 1213 (D. Kan. 2004); Glenn v. Apfel, 102 F. Supp.2d 1252, 1258 (D. Kan. 2000); Anderson v. Apfel, 100 F. Supp.2d 1278, 1286 (D. Kan. 2000); Ward v. Apfel, 65 F. Supp.2d 1208, 1213 (D. Kan. 1999). Because fibromyalgia is diagnosed by ruling out other diseases through medical testing, negative test results or the absence of an objective medical test to diagnose the condition cannot support a conclusion that a claimant does not suffer from a potentially disabling condition. Priest, 302 F. Supp.2d at 1213.

Fibromyalgia is diagnosed entirely on the basis of patients' reports and other symptoms. Brown v. Barnhart, 182 Fed. Appx. 771, 773 n.1 (10th Cir. May 25, 2006). The rule of thumb is that the patient must be positive on at least 11 of the 18 tender points to be diagnosed with fibromyalgia (R. at 425); Gilbert, 231 Fed. Appx. at 783; Brown, 182 Fed. Appx. at 773 n.1; Glenn, 102 F. Supp.2d at 1259. On May 15, 2009, Dr. Veloor found that plaintiff has 18/18 positive tender points (R. at 362).

As the case law makes clear, the lack of "objective" medical evidence is not determinative of the severity of

fibromyalgia.  As this court has previously indicated, it is error for the ALJ to discount plaintiff's allegations of limitations due to fibromyalgia because of the lack of objective medical evidence.  Gibbs v. Colvin, Case No. 11-1318-SAC (D. Kan. March 6, 2013; Doc. 30 at 6-9); Walden v. Astrue, Case No. 11-4120-SAC (D. Kan. Aug. 28, 2012; Doc. 15 at 15-16).

Dr. Veloor found that plaintiff has 18/18 positive tender points; only 11 of 18 must be found to be positive to diagnose fibromyalgia.  Dr. Veloor's opinions are clearly premised on his diagnosis of fibromyalgia (R. at 425-426).  It is clear that the ALJ, as in Gibbs and Walden, improperly discounted the opinions of Dr. Veloor because of the lack of objective medical evidence, despite the diagnosis of fibromyalgia.  This case shall therefore be reversed and remanded for further hearing in order for the Commissioner to reevaluate the opinions of Dr. Veloor in light of the diagnosis of fibromyalgia and the case law set forth above governing the consideration of fibromyalgia.

The ALJ also discounted the opinion of Dr. Veloor because the examination of July 19, 2010 showed a normal gait pattern, and no focal deficits neurologically (R. at 17, 411).  However, the ALJ failed to cite to any evidence indicating that these findings are inconsistent with the opinions expressed by Dr. Veloor.  An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and

not due to his or her own credibility judgments, speculation or lay opinion.  McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002).  The adjudicator is not free to substitute his own medical opinion for that of a disability claimant's treatment providers.  Hamlin v. Barnhart, 365 F.3d 1208, 1221 (10th Cir. 2004).  An ALJ is not entitled to *sua sponte* render a medical judgment without some type of support for his determination. The ALJ's duty is to weigh conflicting evidence and make disability determinations; he is not in a position to render a medical judgment.  Bolan v. Barnhart, 212 F. Supp.2d 1248, 1262 (D. Kan. 2002).  The ALJ clearly erred by failing to cite to any evidence that the findings by Dr. Veloor on July 19, 2010 conflict with the opinions he expressed regarding plaintiff's limitations on November 4, 2010.

Defendant also argues that Dr. Veloor's opinions were discounted because of plaintiff's reports of her daily activities.  The ALJ stated that plaintiff's "significant" activities indicates that plaintiff clearly retains the ability to work (R. at 18, 19).  The ALJ noted that plaintiff takes the children to school every morning (R. at 14), and further indicated that caring for minor children can be quite demanding both physically and emotionally.  The ALJ stated that the ability to care for minor children alone during the day could indicate that plaintiff has the ability to work (R. at 18).

First, according to the regulations, activities such as

taking care of yourself, household tasks, hobbies, therapy,

school attendance, club activities or social programs are

generally not considered to constitute substantial gainful

activity.  20 C.F.R. § 404.1572(c) (2012 at 398).  Furthermore,

although the nature of daily activities is one of many factors

to be considered by the ALJ when determining the credibility of

testimony regarding pain or limitations, Thompson v. Sullivan,

987 F.2d 1482, 1489 (10th Cir. 1993), the ALJ must keep in mind

that the sporadic performance of household tasks or work does

not establish that a person is capable of engaging in

substantial gainful activity.  Krauser v. Astrue, 638 F.3d 1324,

1332-1333 (10th Cir. 2011); Thompson, 987 F.2d at 1490.

In the case of Draper v. Barnhart, 425 F.3d 1127, 1130-1131

(8th Cir. 2005), the ALJ noted that the claimant engaged in

household chores, including laundry, grocery shopping, mowing,

cooking, mopping and sweeping.  The ALJ concluded that

claimant's allegations of disabling pain were inconsistent with

her reports of her normal daily activities and were therefore

not deemed credible.  The court found that substantial evidence

did not support this conclusion, holding as follows:

> **The fact that Draper tries to maintain her
> home and does her best to engage in ordinary
> life activities is not inconsistent with her
> complaints of pain, and in no way directs a
> finding that she is able to engage in light**

**work**.  As we said in <u>McCoy v. Schweiker</u>, 683 F.2d 1138, 1147 (8th Cir.1982) (en banc), the test is whether the claimant has "the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." In other words, evidence of performing general housework does not preclude a finding of disability.  In <u>Rainey v. Dep't of Health & Human Servs.</u>, 48 F.3d 292, 203 (8th Cir.1995), the claimant washed dishes, did light cooking, read, watched TV, visited with his mother, and drove to shop for groceries.  We noted that these were activities that were not substantial evidence of the ability to do full-time, competitive work. In <u>Baumgarten v. Chater</u>, 75 F.3d 366, 369 (8th Cir.1996), the ALJ pointed to the claimant's daily activities, which included making her bed, preparing food, performing light housekeeping, grocery shopping, and visiting friends.  We found this to be an unpersuasive reason to deny benefits: "**We have repeatedly held...that 'the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work.'**" Id. (quoting <u>Hogg v. Shalala</u>, 45 F.3d 276, 278 (8th Cir.1995)). Moreover, we have reminded the Commissioner

> **that to find a claimant has the residual functional capacity to perform a certain type of work, the claimant must have the ability to perform the requisite acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world...The ability to do light housework with assistance, attend church, or visit with friends on the phone does not qualify as the ability to do substantial gainful activity.**

> Thomas v. Sullivan, 876 F.2d 666, 669 (8th
> Cir.1989) (citations omitted).

Draper, 425 F.3d at 1131 (emphasis added).

In the case of Richardson v. Astrue, 858 F. Supp.2d 1162 (D. Colo. March 12, 2012), the court held that the ALJ selectively applied the evidence regarding plaintiff's household activities, socialization with friends, and the fact that she cared for three children.  The court noted that the evidence showed that plaintiff's daily activities were limited, and held that limited activities, in themselves, do not establish that one can engage in sedentary or light work.  Richardson, 858 F. Supp.2d at 1178-1179.  Further, the fact that a claimant takes care of her children does not necessarily mean that this was demanding physically or emotionally, when there is nothing in the record to support that.  Richardson, 858 F. Supp.2d at 1179; see Martinez v. Astrue, 422 Fed. Appx. 719, 728 (10th Cir. April 26, 2011)(there is nothing in the record to support ALJ finding that providing care for daughter is quite demanding both physically and emotionally).

Although plaintiff initially testified that that she takes the children to school every morning (R. at 50), she later clarified her testimony by indicating that on "bad" days (four days a week, R. at 58) she sometimes has her husband come home to take the kids to school; she has also called a taxi to take

13

the kids to school (R. at 59).  Although plaintiff testified

that she does the laundry, cleans the house, and cooks (R. at

54-55), she does not do these activities on "bad" days (R. at

59).  Plaintiff further testified that she sometimes has trouble

standing on her feet, and therefore "a lot of times my husband

has to cook" (R. at 65).  Plaintiff also indicated that

fibromyalgia interferes with her ability to take care of

herself, including showering, putting on makeup, and combing her

hair (R. at 63).  She also has physical problems doing the

laundry (R. at 65).

The ALJ relied on plaintiff's daily activities and care for

her children to discount the opinion of Dr. Veloor and to

conclude that plaintiff retains the ability to work.  The ALJ

stated that plaintiff's "significant" activities, including the

ability to care for minor children, demonstrates her ability to

work (R. at 18, 19).  However, according to the regulations,

activities such as household tasks are generally not considered

to constitute substantial gainful activity.  Furthermore, as the

case law makes clear, the ability to engage in the sporadic

performance of daily tasks, or to engage in ordinary life

activities, do not establish that a claimant can engage in

substantial gainful activity.  Plaintiff's daily activities do

not demonstrate that plaintiff is capable of working.  Although

the ALJ asserts that caring for children can be quite demanding

14

both physically and emotionally, there is nothing in the record

to support the ALJ finding that providing care for the children

is quite demanding physically and emotionally.  Martinez v.

Astrue, 422 Fed. Appx. 719, 728 (10th Cir. April 26, 2011)(there

is nothing in the record to support ALJ finding that providing

care for daughter is quite demanding both physically and

emotionally).

Second, an ALJ cannot use mischaracterization of a

claimant's activities of a claimant's activities by selective

and misleading evidentiary review to discredit his/her claims of

disabling limitations.  Sitsler v. Astrue, 410 Fed. Appx. 112,

117-118 (10th Cir. Jan. 10, 2011).  Although the ALJ found that

plaintiff engaged in significant activities, the ALJ failed to

discuss many of the limitations noted above in her testimony.

When this case is remanded, plaintiff's daily activities must be

considered in light of all the evidence and the case law set

forth above.

## IV.  Did the ALJ err in making his RFC findings?

In light of the errors by the ALJ in his evaluation of the

opinions of Dr. Veloor, and in his evaluation of plaintiff's

daily activities, the ALJ, on remand, will need to make new RFC

findings after properly evaluating the opinions of Dr. Veloor

and plaintiff's daily activities.  The ALJ will need to make RFC

findings that fully comply with SSR 96-8p.  The RFC assessment

must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and nonmedical evidence. The RFC assessment must always consider and address medical source opinions, and if the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96-8p, 1996 WL 374184 at *7. Finally, the ALJ must make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC. SSR 96-8p, 1996 WL 374814 at *5; Fleetwood v. Barnhart, 211 Fed. Appx. 736, 740 (10th Cir. Jan. 4, 2007).

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 21st day of August, 2013, Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge